UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOHN WILHELM, et al.,

                              Plaintiffs,


              -against-                                                    15-cv-4029 (LAK)


NOEL BEASLEY, et al.,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**


              Appearances:


                              Richard G. McCracken
                              Sarah Grossman-Swenson
                              MCCRACKEN, STEMERMAN & HOLSBERRY
                              *Attorneys for Plaintiffs*


                              Ronald E. Richman
                              Taleah E. Jennings
                              SCHULTE ROTH & ZABEL LLP
                              *Attorneys for Defendants*


LEWIS A. KAPLAN, *District Judge*.

              This is one of several actions relating to the decision of the National Retirement Fund

(the "Fund"), a multiemployer pension fund for hotel, casino and laundry employees – on the eve of

bankruptcy filings by several subsidiaries of Caesars Entertainment Corporation (collectively "Caesars

Employers") which had been contributors to the Fund – to expel the Caesars Employers from the

Legacy Plan of the Fund.  That decision, which was made by a divided vote of the Fund's Board of

2

Trustees, allegedly triggered a large withdrawal liability which apparently is the subject of one or more claims in the bankruptcies.

The plaintiffs in this case are trustees of the Fund who dissented from the decision to expel the Caesars Employers.  The defendants are the Fund itself and trustees who voted for the expulsion.  And the essence of plaintiffs' claims is that the decision by the majority trustees to expel the Caesars Employers breached their fiduciary duties of prudence and loyalty because the decision was made without adequate consideration and was not "solely in the interest of the Participants."[1]  The Fund and the defendant trustees have counterclaimed.  The matter now is before the Court on objections by the defendants to so much of the report and recommendation of Magistrate Judge James L. Cott (the "R&R") as recommended dismissal of Counts 1, 2 and 4 of the counterclaim for lack of federal subject matter jurisdiction in that they are not ripe for adjudication.  Defendants protest that the subject claims indeed are ripe for adjudication.

I begin by outlining the counterclaim, all three remaining counts of which depend on the same factual allegations.  First, defendants complain of the plaintiffs' commencement of this action in the District of Nevada, a district, they contend, that has no real connection to any of the parties, that was chosen to burden the plaintiffs, and that was selected to serve the interests of Caesars.[2]  Second, they assert that plaintiffs wrongfully seek to prevent the Fund, which is an unsecured creditor of the bankrupt estates of the Caesars Employers (apparently by virtue of claims asserted on the basis of the withdrawal liability allegedly triggered by their expulsion), from serving on the Caesars Employers

---

[1]

Compl. ¶¶ 84-85.

[2]

See Countercl. ¶ 15.

The action was transferred to this Court not long after it was commenced.  See id. ¶ 16.

3

creditors committee.[3] Third, they assert that the plaintiffs wrongfully disclosed an allegedly privileged memorandum by attaching it to their opposition to the defendants' motion to dismiss the complaint.[4] These three grievances are said to have breached the plaintiffs' fiduciary duties and constituted one or more prohibited transactions foreclosed by ERISA § 409(a).

The magistrate judge quite correctly concluded that these claims all are principally efforts to turn grievances about the manner in which the plaintiffs have conducted or behaved in this lawsuit into ERISA claims and that the resolution of plaintiffs' complaint either will be dispositive, or at least inform the resolution, of defendants' counterclaim.  He quite correctly considered also whether that fact rendered the counterclaim unripe, and thus outside the Court's subject matter jurisdiction, notwithstanding that the issue had not been raised by the parties.[5]  Defendants object.  They argue essentially that the questions whether plaintiffs acted for the benefit of Caesars and not the Fund participants and whether the selection of the Nevada forum, the opposition to the Fund's service on the Caesars Employers creditors committee, and the disclosure of the allegedly privileged memorandum were breaches of fiduciary duty or otherwise violated ERISA and resulted in injury all may be determined now and are independent of the outcome of the plaintiffs' action against the defendants.

---

[3]      *Id.* ¶¶ 17-18.

[4]      *Id.* ¶¶ 12, 19.

[5]      R&R at 7 n.4.

4

Neither defendants' objections nor the R&R address the law of ripeness in any detail. It therefore is relevant to address the subject briefly here.  The Second Circuit has summarized the basic principles:[6]

> Ripeness encompasses two overlapping doctrines concerning the exercise of federal court jurisdiction. *See Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993). The first of these is drawn from "Article III limitations on judicial power," *id.*, and "hence goes, in a fundamental way, to the existence of jurisdiction." *Simmonds v. INS,* 326 F.3d 351, 357 (2d Cir.2003). "The second is a more flexible doctrine of judicial prudence, and constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it."

The first prong of this analysis is:[7]

> a specific application of the actual injury aspect of Article III standing. The "irreducible constitutional minimum of standing contains three elements": (1) "the plaintiff must have suffered an injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quotation marks, citations, alterations, and footnotes omitted). Constitutional ripeness, in other words, is really just about the first *Lujan* factor—to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not "actual or imminent," but instead "conjectural or hypothetical." *See id.* at 560, 112 S.Ct. 2130; *see also New York Civil Liberties Union v. Grandeau,* 528 F.3d 122, 130 n. 8 (2d Cir.2008) ( "Standing and ripeness are closely related doctrines that overlap most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical." (quotation marks and alterations omitted)); *Ross v. Bank of Am., N.A. (USA),* 524 F.3d 217, 226 (2d

---

[6] *Entergy Nuclear Vt. Yankee, LLC v. Shumlin,* 733 F.3d 393, 429 (2d Cir. 2013).

[7] *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688-89 (2d Cir. 2013) (footnotes omitted).

Cir.2008) (because the ripeness and standing doctrines "overlap," claims that were sufficiently "actual and imminent" to establish Article III standing also were ripe for adjudication, "not merely speculative or hypothetical").

The second:[8]

"proceed[s] with a two-step inquiry, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Grandeau,* 528 F.3d at 131–32 (quotation marks and citation omitted). "The 'fitness' analysis is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." *Id.* at 132 (quotation marks and citation omitted). "In assessing this possibility of hardship, we ask whether the challenged action creates a direct and immediate dilemma for the parties." *Id.* at 134.

In this case, the defendants allege that the actions on which they complain caused them injury in fact in that they claim concrete, particularized and completed invasions of legally protected interests that caused them injury. While it reasonably may be suspected that they will find proving that far more demanding than simply alleging it in a counterclaim, that is for another day because the Court is obliged for purposes of this motion to assume the truth of the well pleaded factual allegations. Thus, the "irreducible constitutional minimum" of ripeness has been alleged.

The prudential prong of the ripeness analysis is more difficult. There seems a reasonable likelihood, as Magistrate Judge Cott concluded, that the resolution of the factual and legal questions raised by the counterclaim would be facilitated by awaiting the outcome of the plaintiffs' claim against the defendants, as there is significant overlap. Moreover, if defendants were to prevail with respect to the claims in the complaint, it seems unlikely that they would have any further interest in fighting about whether the commencement of this case in Nevada as opposed to some other forum

---

[8] *Id.* at 691 (footnote omitted).

is actionable, whether it caused any injury (lawyers' hourly rates in Las Vegas might well be a bit lower than those in New York City), and whether the disclosure of the allegedly privileged memorandum – a cat long since out of the bag – caused any measurable injury.  And there would be no hardship to defendants if the litigation of their counterclaim were to await the outcome of the plaintiffs' claims against them.  Thus, I am in considerable sympathy with the magistrate judge's R&R.  Nonetheless, it does not seem to me that litigation of the remaining part of the counterclaim, which may well be susceptible to disposition either by deciding the merits of the Rule 12(b)(6) motion already made or on summary judgment and seems to raise relatively finite issues, would be terribly burdensome to the Court or the parties.  It would be closely related to the litigation of the plaintiffs' claims.  Further, the vitality of the prudential element of the ripeness analysis recently has been questioned by the Supreme Court, which has observed that it is in "some tension with . . . the principle that 'a federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging.'"[9]  In consequence, even assuming its continued vitality, I decline to exercise my discretion in substance to decline jurisdiction over this claim.

Accordingly, plaintiffs' motion to dismiss the counterclaim [DI 72] is granted to the extent that Count 3 is dismissed for failure to state a claim on which relief may be granted.  Insofar as defendants object to the R&R's recommendation that Counts 1, 2 and 4 be dismissed for lack of subject

---

[9]

*Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2347 (2014) (quoting *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014)).

The Court notes also, although it expresses no opinion on the issue, that the Ninth Circuit has held that courts should not consider the prudential component of the ripeness doctrine in private contract litigation, as distinguished from the administrative law context.  *See Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1086 (9th Cir. 2015); *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005).  The Second Circuit does not appear to have addressed this issue.

matter jurisdiction, the objection is sustained.  The matter is remanded to the magistrate judge for

further proceedings with respect to the motion to dismiss Counts 1, 2 and 4 on the ground that they fail

to state a claim upon which relief may be granted.

           SO ORDERED.

Dated:      January 6, 2016

                                                   Lewis A. Kaplan
                                      United States District Judge